Habiib SAAD, Plaintiff,

v.

SHELL OIL COMPANY, a Foreign Corporation, Defendant.

Civ. A. No. 8–71919.

United States District Court,
E. D. Michigan, S. D.

Nov. 8, 1978.

Mark H. Cousens, Fieger, Cousens & Boesky, Southfield, Mich., for plaintiff.

Robert G. Cutler, Nancy Garlock Edmunds, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant.

MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Habiib Saad, who holds a franchise for the retail sale of petroleum products and lease of certain premises from Shell Oil Company, has petitioned this court for a preliminary injunction to allow him to continue to operate pending the outcome of his suit charging that Shell has wrongfully failed to renew his franchise and lease.

■ This suit is brought under the Petroleum Marketing Practices Act which was enacted on June 19, 1978. 15 U.S.C. § 2801 *et seq.* The act is intended to protect the franchised retailers of motor fuel in their relationships with their franchisors and to provide a uniform set of rules to be used throughout the country. Congress sought to remedy a situation which had led to "numerous complaints by franchisees of unfair terminations or non-renewals of their franchises by franchisors for arbitrary and even discriminatory reasons." S.R. 95–731 at 17. Because of the interest in uniformity, the act specifically prohibits the enforcement of state and local laws which

differ from the federal act dealing with this subject. 15 U.S.C. § 2806.

The most striking thing about the act is its procedure for dealing with a request for a preliminary injunction by a franchisee who has received notification of termination or non-renewal. The act provides that in such cases:

> The court shall grant a preliminary injunction if—
>
> (A) the franchisee shows—
>
> (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and
>
> (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
>
> (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)(2).

The act further provides that in all proceedings of this sort:

> . . . the franchisee shall have the burden of proving . . . the non-renewal of the franchise relationship. The franchisor shall bear the burden of going forward with evidence to establish as an affirmative defense that such . . . nonrenewal was permitted under § 102(b) . . . ..

Section 102(b) of the act provides that a franchisor may fail to renew any franchise relationship if the notification requirements of the act are met and the termination is based on one of the grounds for termination listed in the act. 15 U.S.C. § 2802(b)(1). One of the permissible grounds is:

> A failure by the franchisee to operate the marketing premises in a clean, safe, and healthful manner, if the franchisee failed to do so on two or more previous occa-

sions and the franchisor notified the franchisee of such failures.

15 U.S.C. § 2802(b)(3)(C).

The limited issues before the court on this request for preliminary injunctive relief are:

1. Has the franchisee (Saad) shown that the franchise has not been renewed?

2. Has the franchisee shown that there exists, based on the facts developed in the proceeding for the preliminary injunction, that there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation?

3. Does the balance of hardships fall on the franchisee or the franchisor?

It is clear from the evidence in this case that the balance of hardships falls on the franchisee and that the franchise has been shown not to have been renewed. Thus, the only real question in this case relates to whether there are sufficiently serious questions going to the merits to make such questions a fair ground for litigation.

■ Clearly, although Congress wanted and designed an act to protect the franchisee from overbearing franchisors, it did not desire to impose upon the courts needless litigation. The use of the terms "serious question" and "fair ground" indicates that it intended a significant showing of something that would constitute some reasonable chance of success even though it could not be shown that there was a likelihood of probability of success as is required in the ordinary preliminary injunction matter.

The test applied in the ordinary case is "Has the petitioner made a strong showing that he is likely to prevail on the merits . . . ?" *Virginia Petroleum Jobbers Ass'n. v. Federal Power Commission*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). Other phrases used are "strong likelihood of success", or "substantial indication of probable success". In the ordinary preliminary injunction case, the court's attention is directed at a "strong showing" and at "probability".

This statute is intended to require less than that but it is clear that it does require something. Instead of a "strong showing" or "probability" of success, the terms "serious question" and "fair ground for litigation" suggest merely a reasonable chance of success, something far less than the probability or likelihood required by *Virginia Petroleum Jobbers, supra,* and *Corning Glass Works v. Lady Cornella Inc.,* 305 F.Supp. 1229 (E.D.Mich.1969).

The court, therefore, must look at the facts produced to determine whether they indicate "serious questions" that go to the merits and whether such questions make a "fair ground" for litigation or some reasonable chance of success. If the questions are not serious or they do not go to the merits or they do not make fair grounds for litigation or a reasonable chance of success, the injunction should not issue.

The grounds on which the franchise was not renewed was that provided in 15 U.S.C. § 2802(b)(3)(C)—"a failure by the franchisee to operate the marketing premises in a clean, safe, and healthful manner" of which the franchisee has been notified on at least two previous occasions.

In this case, there is no serious question but that Shell Oil Company did give the proper notification of its intention not to renew Mr. Saad's franchise because of what it felt was his consistent failure to keep his station clean. In addition to two registered letters referring specifically to the lack of maintenance of the premises, there were numerous corporate "Image Reports" which served to put the plaintiff on notice of Shell's dissatisfaction.

Likewise, there is no serious question on which there could be a reasonable chance of success but that the station was filthy and that it was repeatedly so throughout a long period. To show this, Shell introduced a number of pictures of the station, along with the testimony of several employees who detailed the corporate commitment to cleanliness.

■ Testimony of Saad to the contrary does not make such a question for it simply indicates a perception of a standard that is not deemed acceptable under the franchise agreement or under the law. Each franchise is a part of a complex marketing system in which the public is encouraged to make its choice as to filling stations to patronize based on the personal service facilities and the cleanliness of those facilities. A breakdown in any one facility can seriously affect others in the system. The clear impression that comes from the evidence and arguments presented by Saad is of a disagreement with what should be the standard of cleanliness required by the statute and not whether there was a serious question of cleanliness that makes a fair question for litigation of the merits. The court can find nothing in the record to create any reasonable chance of success on this issue.

■ Plaintiff's assertion that the provision in the lease giving Shell the right to enter and clean up a station that it considers to be excessively dirty is Shell's only remedy is not correct. That provision gives Shell a right in addition to its rights under the act; it does not reduce the reasons for which Shell might properly decide not to renew a franchise.

Plaintiff is correct in his contention that the act was intended to make preliminary injunctions easier to obtain than they otherwise would be. However, this is not to say that they will be issued as a matter of course. The only time that a court must grant such an injunction is when the statutory requirements are met. In this case, while plaintiff has shown that he had a franchise and that defendant has decided not to renew that franchise, he has failed to show that there "exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation" and that failure is fatal to his request for an injunction.

This court finds that Shell decided not to renew Mr. Saad's franchise because of a failure to operate the premises in a clean manner and it further finds that Shell notified Mr. Saad of numerous failures of this sort before resorting to the non-renewal here contested. Most importantly and in

conclusion, the court finds that the franchisee has not shown the existence of fairly litigable questions going to the merits.

For the above stated reasons, the motion for preliminary injunction is denied.

So ordered.