Edward MARINI t/a Marini's
Arco, Plaintiff,

v.

ATLANTIC RICHFIELD CO., a Pennsylvania Corporation, Defendant.

Civ. No. 79–2053.

United States District Court,
D. New Jersey.

Aug. 27, 1979.

Lawrence Silver, Barnegat, N. J., for plaintiff.

Archer, Greiner & Read, P.C. by John V. Fiorella, Haddonfield, N. J., for defendant.

## OPINION

FISHER, Chief Judge.

Plaintiff operates a retail gasoline dealership pursuant to a franchise relationship with defendant-distributor as defined in the Petroleum Marketing Practices Act, (PMPA), 15 U.S.C. § 2801, *et seq.* This business has been conducted at Route 72 and Jennings Road, Manahawkin, Ocean County, New Jersey, since 1970 in accordance with three leases each of three year duration, the latest expiring May 31, 1979. By various certified letters commencing December 29, 1978, defendant notified plaintiff of its refusal to renew the business arrangement beyond its stipulated termination date by reason of (1) arrearages in payments due; (2) failure to operate for seven consecutive days; (3) trademark violations. Plaintiff seeks a preliminary injunction continuing prior restraints prohibiting defendant from terminating the franchise and leasehold agreements. Defendant moves for a mandatory injunction directing plaintiff to quit the premises.

Part 1 of PMPA, which became effective June 19, 1978, governs terminations and renewals of franchise agreements, and was intended by Congress to protect independent gasoline marketers who lacked the bargaining position to override distributor decisions not to renew franchises. In mov-

ing the legislation, Congressman Staggers underscored this purpose:

> We need the continued presence of the independent gasoline marketers who care about the motoring needs of their customers and who will continue to provide important consumer services and price competition.
>
> This legislation will do just that. It will place the protection of the federal government between the franchisor and the franchisee. The inequity of power which exists between the franchisor and his franchisee is balanced by this bill. That balance is provided by prohibiting termination or nonrenewal of any franchise without good cause. As a result, gasoline retainers will no longer be threatened by arbitrary, unfair, discriminatory or punitive termination or nonrenewal of their livelihood. The entire motoring public will ultimately benefit from this result.

123 *Cong.Rec.* 3027 (1977).

The grounds asserted for nonrenewal of plaintiff's franchise are defined in several subsections of PMPA, allowing such action upon

> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—
>
> > (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title . . .

15 U.S.C. § 2802(b)(2).

Events "relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable", set forth in § 2802(c), include:

> (8) failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled;

> (9) failure by the franchisee to operate the marketing premises for—
>
> > (A) 7 consecutive days . . .
>
> > \*    \*    \*    \*    \*    \*
>
> (10) willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee . . . .

The term "failure" as used in PMPA specifically excludes "any failure for a cause beyond the reasonable control of the franchisee." 15 U.S.C. § 2801(13).

Injunctive relief is permitted by PMPA if

> (A) the franchisee shows—
>
> > (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and
>
> > (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
>
> (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. 2805(b)(2)(A) and (B).

In proceedings seeking exercise by the Court of its equitable powers,

> . . . the franchisee shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship. The franchisor shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted under section 2802(b) or 2803 of this title . . .

15 U.S.C. 2805(c).

Interpretation of the 1978 PMPA is a matter of first impression in this district and has been discussed in only two reported cases to date, *Saad v. Shell Oil Co.*, 460 F.Supp. 114 (E.D.Mich.1978) and *Frisard v. Texaco Inc.*, 460 F.Supp. 1094 (E.D.La.1978).

In *Frisard* the narrow issue related to retroactive application of the notice requirements and provides no guidance. The *Saad* court denied equitable relief to a franchisee, finding that a mere disagreement between the parties as to the degree of cleanliness at plaintiff's service station did not rise to a serious question constituting fair grounds for litigation on the merits. However, it addressed the probable legislative intent by stating:

> Congress . . . intended a significant showing of something that would constitute some reasonable chance of success even though it could not be shown that there was a likelihood of probability of success as is required in the ordinary preliminary injunction matter.

*Saad v. Shell Oil Co., supra* at 116.

Obviously this criteria differs from and is less stringent than the more familiar showing required by Fed.R.Civ.P. 65(b).

At the evidentiary hearing the parties each established their preliminary burdens by stipulating that the franchise relationship had not been renewed and payments had not been made to defendant in a timely manner, although the exact amount of arrearage remains disputed. The litigants did not stipulate and defendant failed to prove through testimony or exhibits its affirmative defenses of trademark violation and failure "beyond the reasonable control of the franchisee" to operate for seven consecutive days. On the contrary, the evidence reveals that the marketing premises suffered substantial fire damage on January 2, 1979 rendering the service station inoperable until approximately mid-March. Defendant's initial notice of nonrenewal dated December 29, 1978 did not refer to either of these grounds. Nevertheless, a February 12, 1979 letter asserted the trademark charge and a February 22, 1979 purported termination letter cited this as a "continuing" trademark violation, coupled with the failure to operate—all during a period when it is clear that no sales occurred due to the partial destruction of the station, and event obviously beyond the reasonable control of plaintiff. Notices by defendant based upon these two affirmative defenses is contrary to the express language, intent and spirit of the Act, and cannot serve as the basis for permitting either nonrenewal or termination.

Thus, plaintiff bore the burden of proving that on balance mitigating circumstances justified default and the granting of injunctive relief. Plaintiff has met that burden.

The more credible evidence adduced at the hearing was that of plaintiff, who contended that his increase in accounts payable to defendant was the direct result of sporadically honoring defendant's demands to "discount" gas and yielding under pressure to purchase an $8,000 truckload of promotional motor oil in May 1978. It is not fatal to plaintiff's case that apparently only he uses the word "discount" to describe the process of reducing gas prices to stimulate volume sales. In fact, this layman's term is well chosen. Plaintiff testified to the manner in which retailer dealers determine through an analysis of overhead the price above cost that must be charged for gas in order to realize a profit. Any reduction per gallon below this figure represents a "discount" to buyers and a consequent margin of loss to seller. Plaintiff found himself in the losing seller position and the December 29, 1978 notification of nonrenewal was served following his announced refusal to continue this practice.

The suspicious testimony is the insistence of defendant's marketing agent, Ralph Dalon, who admittedly visits stations to discuss policy, supplies, good-will and to give business advice, that he never discussed volume of sales with plaintiff nor at company meetings. The record reveals that he earns commissions on gas and motor oils during promotional programs. Dalon's displeasure that plaintiff's operation had produced "zero" income to him was apparent in his testimony.

Plaintiff's testimony reveals that he was threatened on several occasions with lease termination or exhorbitant raises in rent if he failed to reduce prices and increase volume; that his decision to buy the motor oil

was motivated by the marketing agent's promise "to get the company off [his] back." July 27, 1979 Testimony of Edward Marini p. 25, l. 24–25. He was further promised an exclusive local market for the product. Instead, his potential for disposing of this vast quantity was frustrated when defendant placed identical oil in four nearby stores which undersold plaintiff.

I find as a fact that plaintiff was pressured to purchase the motor oil; his inability to sell it in volume created greater arrearages than defendant had condoned in the past; and defendant seized that opportunity as a basis for refusing to renew the franchise relationship.

Numerous serious questions of fact exist in this case. The most significant is whether defendant's conduct was sufficiently unreasonable to invoke the "failure" exclusion of PMPA and nullify notice of nonrenewal. These issues, together with the pendent claims raised by the pleadings constitute a fair ground for litigation. Failure to provide equitable relief to plaintiff pending determination of the case on its merits would extinguish any effective remedy should he prevail. On balance, fully recognizing the problems involved in mandating that adversaries continue a relationship which ideally should be undertaken in a spirit of mutual cooperation and respect, I find that less hardship is imposed upon defendant ·if it should be successful at trial.

Preliminary injunction will issue continuing the restraints previously granted. No bond is required, 15 U.S.C. 2805(b)(3). Defendant's motion is denied. Plaintiff will submit an order in accordance with this opinion within ten days.