**Gene WALTERS, d/b/a Walters Chevron Service Station, Plaintiff,**

v.

**CHEVRON U. S. A., INC. (formerly Standard Oil Company), Defendant.**

Civ. A. No. C79–1644A.

United States District Court, N. D. of Georgia, Atlanta Division.

Sept. 13, 1979.

---

David R. Wininger, Wininger & Hughes, P. A., Decatur, for plaintiff.

Jule W. Felton Jr., and John Parker, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

## ORDER

EVANS, District Judge.

This matter is before the Court on Motion of the Plaintiff, Gene Walters d/b/a Walters Chevron Service Station, for a preliminary injunction against the Defendant, Chevron U.S.A., Inc. Plaintiff seeks relief under the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (hereinafter the "Act"), which is legislation designed to protect motor fuel franchisees from arbitrary or discriminatory franchise termination or nonrenewal by their franchisors.

Based on the provisions of the Act and the evidence adduced at an evidentiary hearing held on September 6, 1979, the Court has determined that the Plaintiff's request for a preliminary injunction should be denied.

Plaintiff Walters was lessee under a lease with Defendant Chevron dated November 29, 1973. The lease expired by its own terms on November 30, 1978. Thereafter, the tenancy was continued on a month-to-month basis. On May 24, 1979, Chevron sent Walters a letter notifying him that it did not wish to continue the relationship and further notifying him that it expected him to vacate the subject premises on August 31, 1979. Walters refused to vacate on that date and brought this action, challenging Chevron's threat of dispossessory proceedings.

The Act basically provides that a franchisor may not terminate or decline to renew a franchise, except based upon certain grounds deemed permissible by the Act. When a non-permissible termination or non-renewal occurs and prompt injunctive relief is sought by the franchisee, injunctive relief is mandatory. Further, the Act provides that the injunction shall issue, not upon the customary finding of probability of success on the merits at the trial, but rather upon a lesser standard defined in the Act. *See* 15 U.S.C. § 2805(b)(2)(A)(ii); *see also Saad v. Shell Oil Co.*, 460 F.Supp. 114 (E.D.Mich. 1978).

The Act provides that prior to termination or nonrenewal of any franchise relationship, the franchisor must send written notice to the franchisee of the proposed termination or nonrenewal. The notice must normally be furnished not more than 90 days prior to the date on which the termination or nonrenewal takes effect and must comply with certain technical requirements as to form and content. 15 U.S.C. § 2804(a).

In the instant case, the parties agreed that a timely, legally sufficient notice had been sent by Chevron to Walters. Further, the parties stipulated that there had been a "nonrenewal" of the franchise, as that term is defined in the Act.

In opposing the motion for preliminary injunction, Chevron relies upon two independent statutory grounds for permissible nonrenewal of the franchise, as follows:

(1) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure—

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to Section 2804(a) of this title; 15 U.S.C. § 2802(b)(2)(A).

and

(2) A failure by the franchisee to operate the marketing premises in a clean, safe, and healthful manner, if the franchisee failed to do so on two or more previous occasions and the franchisor notified the franchisee of such failures. 15 U.S.C. § 2802(b)(3)(C).

Chevron further argues that even if the evidence does not satisfy the technical grounds for permissible nonrenewal, that the Court should decline to grant injunctive relief, citing § 2805(b)(4) of the Act. That section provides that the Court need not exercise its equity powers to compel continuation or renewal of the franchise relationship if the action was commenced more than 90 days after the date on which the notification of nonrenewal was posted or delivered to the franchisee. In this case, the action was commenced more than 90 days after the date of delivery of the notice to the Plaintiff.

Chevron's evidence showed that from 1974 through the spring of 1979, there were repeated instances in which the service station premises were found to be in unsatisfactory condition when visits were made by marketing representatives. One witness, who stated he had visited the premises approximately twice a month during the years

1974 through 1976, said that on every visit he found the men's room to be dirty. He said no hand towels or toilet tissue was provided. He also testified that on many occasions there were junk vehicles and accumulated refuse on the premises. He stated that all such problems were called to the attention of Mr. Walters with a request that he correct them.

The marketing representative who had been assigned to cover Plaintiff's station during the period from early 1977 through the present time testified that he observed continuing problems with junk vehicles, junk tires and other trash being left on the premises for an extended period of time. At one point, an abandoned refrigerator with the door still left on was found on the site; it was removed at Chevron's request. He said that the problem with cleanliness of the restroom continued too. Numerous written reports and photographs evidencing the foregoing were admitted into evidence by stipulation at the hearing.

Plaintiff's evidence was principally to the effect that conditions at his service station did not vary materially from those prevailing at other service stations. However, Plaintiff did not attempt to refute many of Chevron's specific allegations. The only principal contention of Chevron specifically disputed by Plaintiff was the question of whether photographs taken by Chevron indicated that pools of oil were standing on the premises (as opposed to water or water with some oil in it). The evidence on this latter point on the whole appeared to be in Mr. Walters' favor.

■ As noted above, Chevron claims it was entitled to decline to renew the franchise agreement because of Walters' failure to operate the service station in a "clean, safe and healthful" manner, and that he failed to do so on two or more previous occasions and was notified of such failures. See 15 U.S.C. § 2802(b)(3)(C). The evidence abundantly supports a finding that the franchisee failed to operate the station in accordance with reasonable health and cleanliness standards and that many requests were made that he upgrade such

standards but that he failed to do so. Whether any of Plaintiff's failures in connection with maintenance of the service station rise to the level of failure to operate in a "safe" manner is less clear, at least with respect to those items which Plaintiff failed to correct after being requested to do so.

Chevron also is proceeding under § 2802(b)(2)(A) pertaining to failure by the franchise to comply with any provision of the franchise which is both reasonable and of material significance to the franchise relationship.

The Dealer Lease dated November 29, 1973, which constitutes the franchise agreement, provides in Section 5(a)(5) that the lessee agrees:

> To keep said premises, including the restrooms and all buildings, driveways, lawns, shrubs and equipment thereon, in good appearance and in a clean and orderly condition, and to provide at all times efficient, qualified and neatly uniformed attendants.

The Court finds that said provision of the Dealer Lease is both reasonable and material, given the franchisor's obvious stake in the maintenance of its image with the public.

The only issue remaining as to Chevron's right to invoke the protection of § 2802(b)(2)(A) is whether Chevron has waived the right to rely on this provision, since the referenced problems began to occur a number of years prior to the date of the nonrenewal notice. The Act permits termination for failure to comply with a franchise provision *if* the franchisor first acquired actual or constructive knowledge of such failure "not more than 120 days prior to the date on which notification of termination or nonrenewal is given . . ." 15 U.S.C. § 2802(b)(2)(A)(i). In this connection, the evidence showed that on numerous occasions, both within and without the 120-day period immediately preceding the date on which notification of nonrenewal was given, there were instances where inspections indicated that the restrooms were

dirty and there were discarded tires and other junk piled up on the premises. The evidence indicates consistent efforts by Chevron to have these problems corrected, including attempts made within the 120-day period immediately preceding the date of the notice of nonrenewal.

 The Court believes the better approach is to treat each instance when an inspection revealed noncompliance with the lease as a separate failure to comply. The evidence indicates that Chevron did so, in that separate complaints were made to Walters following individual inspections. Further, the subject violations were not of a purely static nature.

This approach is also supported by the legislative history pertaining to the Act, which notes that the time limitations are imposed to preclude a franchisor from basing termination or nonrenewal upon "old and long-forgotten events". (S.Rep. No. 95–731, 95th Cong., 2nd Sess. 33, reprinted in [1978] U.S.Code Cong. & Admin.News 892). Further, the legislative history notes that the time limitations are not intended to stop a franchisor from exercising termination or nonrenewal rights based upon a future event which constitutes a ground for termination or nonrenewal, even if such future event is a repeat occurrence of an event with respect to which the previous exercise of termination or nonrenewal rights was waived. (S.Rep. No. 95–731, 95th Cong., 2nd Sess. 33, reprinted in [1978] U.S.Code Cong. and Admin.News at 892). As pointed out by Chevron's counsel, any other interpretation would run counter to the express purpose of the legislation, namely, to prevent arbitrary termination of franchise relationships by the franchisor.

Therefore, the Court finds pursuant to § 2805(b)(2)(A) that the evidence fails to show that there exist sufficiently serious questions going to the merits to make the question of the permissibility of Chevron's election not to renew the franchise a fair ground for litigation. Rather, the evidence adduced at the preliminary injunction hearing strongly indicates that Chevron was entitled to elect nonrenewal of the franchise under § 2802(b)(2)(A).

Completely aside from the evidence of Chevron's technical entitlement to elect nonrenewal, the granting of injunctive relief is in any case discretionary in this instance, since the action herein was commenced more than 90 days after the service station operator's receipt of notice of nonrenewal. In this connection, the Court is constrained to comment that even if the technical requirements of the Act pertaining to permissible nonrenewal had not been fully complied with by Chevron, the equities of this case do not favor Plaintiff. This is so because the evidence indicates numerous continuing failures by the franchisee to maintain reasonable standards of cleanliness and appearance at the service station, in the face of many requests for corrective action by the franchisor. Hence, the burden which would be imposed on Chevron were the Court to grant an injunction pending trial is deemed unacceptable under the circumstances.

Plaintiff's Motion for Preliminary Injunction is hereby DENIED.