John Howard CANTRELL, d/b/a
Cantrell's Exxon Service

v.

EXXON CO. U.S.A., A DIVISION OF
EXXON CORPORATION.

No. 3-83-0537.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 8, 1983.

Timothy L. Takacs, Nashville, Tenn., for plaintiff.

John W. Tavormina, Houston, Tex., for defendant.

MEMORANDUM

JOHN T. NIXON, District Judge.

This action filed pursuant to the Petroleum Marketing Practices Act (PMPA), 15

U.S.C. §§ 2801–2806, seeks to enjoin the defendant, Exxon Company U.S.A. (Exxon), a division of Exxon Corporation, from terminating the franchise of the plaintiff, John Howard Cantrell, d/b/a Cantrell's Exxon Service. This Court has jurisdiction pursuant to 15 U.S.C. § 2805(a). On August 23, 1983, both motions came on for hearing at which time the plaintiff testified and documents were received into evidence. For the reasons that follow, the plaintiff's pending motion for a preliminary injunction will be denied and the defendant's motion for summary judgment will be granted.

The crux of this complaint is that the plaintiff and defendant have a "franchise relationship" within the meaning of the PMPA and that the defendant violated that Act when it attempted to terminate the plaintiff's franchise. The defendant, on the other hand, contends that its termination of the franchise was lawful under the Act based upon the plaintiff's failure to make timely rental payments.

The parties have stipulated to the following set of facts for purposes of the pending motions. On or about November 1, 1981, John Howard Cantrell and Exxon entered into a Retail Service Station Lease Agreement and Sales Agreement. These agreements constituted a franchise relationship under the PMPA and pertained to the operation of a service station located at 1910 Dickerson Road, Nashville, Tennessee. The lease between Cantrell and Exxon provided in part:

6. GENERAL COVENANTS: Lessee [Cantrell] agrees ...

(f) to pay the rent herein specified at the time when same is due.

14. TERMINATION

(b) This lease may be terminated by Exxon:

(V) If Lessee fails to pay in a timely manner any sums when due hereunder.

(XII) If there occurs any other circumstance under which termination of a franchise is permitted under the provisions of the Petroleum Marketing Practices Act (P.L. 95–297).

The lease also provided:

2. RENT

(a) Lessee shall pay as rent to Exxon One Thousand Three Hundred Fifty-One and No 100 dollars ($1,351.00) per month (to be prorated for periods of less than a month). *Rent for each month shall be due and paid on or before the fifteenth (15th) day of each month,* unless Exxon gives Lessee written notice of a different time or schedule of payment, in which event rent shall be due in accordance with said notice (emphasis supplied).

On or about the 1st day of each month, Exxon forwarded to Cantrell an invoice which stated that the rent was due on or before the fifteenth day of the month. The plaintiff has admitted that he understood that the rent was "delinquent on the fifteenth". Nevertheless, he was persistently delinquent in making the rental payments during the past year. The postmarks on Cantrell's payment envelopes demonstrate his chronic delinquencies, with the exception of the month of January 1983, from September 1982 through March 1983. Indeed, the plaintiff has admitted the accuracy of the defendant's Answers to Interrogatories which indicate that as far back as December 1981 the plaintiff was continually late in making the payments.

The plaintiff has admitted that he did not pay Exxon on time for either the October 1982 or November 1982 rent. As of November 30, 1982, Exxon had not received rent payments from Cantrell for the months of October or November. On December 1, 1982, Exxon sent a letter to the plaintiff advising him that his rent was in arrears and requesting payment. This letter also stated that Cantrell should immediately contact his sales representative if he had any dispute or question regarding rental payments. As of December 29, 1982, Exxon had still not received rent payments from Cantrell for the months of October or December, 1982.

On December 30, 1982, Exxon sent another letter to Cantrell. The letter in-

formed Cantrell that he had until January 15, 1983 to make his rental account current. The letter stated that Exxon would terminate its relationship with Cantrell if his account was not current by January 15, 1983. By January 19, 1983, Cantrell's rental account was current. Although this was four days after the January 15, 1983 deadline, Exxon did not take termination action against Cantrell at that time.

The December 30, 1982 letter also stated the following:

> *Furthermore, even if you bring your account current by this deadline you should be aware that we will take termination action without further notice or warning if you should become delinquent more than one month's rent at any time during the remaining term of this lease.*

If you have any dispute or questions regarding rental, it is imperative that you contact your sales representative immediately to discuss this matter. Otherwise, we expect immediate payment of the rental amount specified above.

*PLEASE NOTE THAT TERMINATION ACTION WILL BE TAKEN AS DESCRIBED IN THIS LETTER WITHOUT FURTHER WARNINGS BEING ISSUED TO YOU DURING THE REMAINING TERM OF THE LEASE* [emphasis and capitalization in original].

The plaintiff has admitted that he received Exxon's December 30, 1982 letter and that there was no doubt in his mind that he would be terminated if he again fell two months behind in rent payments. The plaintiff's February, 1983 rent was not received by Exxon on or before February 15, 1983, nor was it or the March rent received by Exxon on or before March 15, 1983. Consequently, Cantrell was again two months behind in rent payments.

On March 28, 1983, Exxon had still not received Cantrell's rent payments for February or March of 1983. In accordance with the warning given in Exxon's December 30, 1982 letter to Cantrell, Exxon sent to Cantrell, on March 29, 1983, a letter terminating Cantrell's franchise relationship with Exxon. Attached to this letter was a summary of the Petroleum Marketing Practices Act. The Court notes that a copy of the same, exhibited to the complaint, apparently was submitted to the plaintiff by Exxon at the time the plaintiff executed the most recent Retail Service Station Lease and Sales Agreement. Exxon's March 29, 1983 letter stated that Cantrell should vacate the premises on July 8, 1983. On that day, Cantrell refused to vacate the premises and hand delivered to Exxon's field sales manager a copy of Cantrell's complaint in this matter. The plaintiff has stated that he understood the sole reason that Exxon was terminating his franchise was his failure to pay rent.

The franchise relationship in question, as the parties agree, is governed by the provisions of the PMPA. It can therefore be terminated only if one or more of the grounds set forth in 15 U.S.C. §§ 2802(b)(2) or (c) are satisfied. *Walters v. Chevron, U.S.A., Inc.*, 476 F.Supp. 353, 355 (N.D.Ga. 1979), *aff'd*, 615 F.2d 1135 (5th Cir.1980). Exxon claims that its termination of the plaintiff's lease is permissible under the provisions of Section 2802(b)(2)(A), (B) and (C), arguing, primarily, that the plaintiff's nonpayment of rent constituted "the occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise relationship is reasonable." 15 U.S.C. § 2802(b)(2)(C). This general exception to the Act's proscription of franchise terminations is further defined as, among other things, "failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled." 15 U.S.C. § 2802(c)(8).

The plaintiff argues that Congress' explicit enumeration of such a failure to pay as an event making termination reasonable does not dispose of the issue before this Court: that is, whether Exxon's termination of the franchise was permissible under the Act. The plaintiff argues that regardless of the apparent application of section 2802(c)(8) to the facts of this case, this Court must still engage in an ad hoc deter-

mination of whether, under the circumstances, Exxon's action in terminating the plaintiff's franchise for persistent delinquency was reasonable.

■ The plaintiff cites no case authority for the proposition that such an ad hoc determination is necessary or appropriate when an explicit ground for termination under section 2802(c) applies. Instead, the plaintiff cites cases in which termination or nonrenewal was based on a ground not explicitly enumerated in the Act. *See Brach v. Amoco Oil Co.*, 677 F.2d 1213 (7th Cir.1982) (franchisee failed to secure financing for purchase of premises); *Lyons v. Mobil Oil Corp.*, 526 F.Supp. 961 (D.Conn.1981) (former franchisee's estate asserted interest in franchise). As both of these courts observed, Congress in section 2802(c) has given 12 illustrations in which termination of the franchise relationship is reasonable; however, this statutory list does not purport to be exhaustive and the legislative history clearly states that the courts may undertake careful scrutiny of nonenumerated events to determine whether they also constitute events "as a result of which termination or nonrenewal is reasonable." *Brach*, 677 F.2d at 1219; *Lyons*, 526 F.Supp. at 965; Senate Report No. 95–731, 95th Cong., 2d Sess. 38, [1978] U.S. Code Cong. & Admin.News 873, 896. These authorities nevertheless provide no support for the plaintiff's argument that this Court must further examine the circumstances of an event which clearly falls with section 2802(c) to determine whether it constitutes a reasonable ground for termination. Indeed, in a passage quoted by plaintiff to this Court, the *Brach* Court distinguished situations which are to be deemed reasonable under section 2802(c)(8), stating that the section was "intended to cover the potential problem of *repeated lateness or arrearage in rent* or motor fuel payments *rather than the situation here.*" 677 F.2d at 1221 (emphasis supplied). Arrearage in rent is the precise ground for the termination at bar. The determination that it is reasonable to terminate in this situation has already been made by Congress.

■ The plaintiff also argues, to no avail, that an ad hoc reasonableness determination is necessary because Exxon's warning letter of December 30, 1982 purported to define an event relevant to the franchise relationship, namely, the nonpayment of rent when due. The *Lyons* Court, plaintiff argues, held that the franchisor cannot contractually define such an event and thereby "overcome the clear intent of Congress" to protect the franchisee against overreaching by powerful franchisors. 526 F.Supp. at 964. This Court agrees with the reasoning of the *Lyons* Court. The *Lyons* case is, again, nevertheless inapposite. Unlike the situation in *Lyons*, where none of the listed grounds of section 2802(c) applied, in the present case there is no need for the defendant to resort to a contractually defined "event or occurrence" to justify termination. While the plaintiff is indeed obligated by the lease agreement to make timely rental payments, Congress itself has made the determination that such nonpayment constitutes a reasonable ground for termination. For this Court to redefine what Congress has already deemed an event making termination reasonable would, indeed, be to overcome the clear intent of Congress.

■ Further, the *Lyons* Court itself recognized the "vital distinction between the failure by a franchisee to comply with a provision in a contract and the parties agreeing that an event is one that is relevant to the franchise relationship." 526 F.Supp. at 965. In the instant case, not only has the defendant terminated for a reason expressly contemplated by Congress, but the franchisee has chronically failed to comply with the rental provision set forth in the lease agreement. As the defendant correctly contends, such a failure on the part of the franchisee constitutes an additional basis for termination independent of those enumerated in section 2802(c). Section 2802(b)(2)(A) permits termination when there is a "failure by the franchisee to comply with any provision of the franchise, which provision is both rea-

sonable and of material significance to the franchise relationship...." The plaintiff concedes "his arrearages in rent is an event material and relevant to the franchise relationship", and does not dispute that timely payment of rent is a material and significant provision of the franchise. Plaintiff's Mem. at 6. The Court therefore finds that Exxon's termination of the franchise was not only clearly permissible under section 2802(c)(8), but notes that another basis may be present under section 2802(b)(2)(A).[1]

 Moreover, the Court notes that even if the PMPA required the courts to consider the reasonableness of termination for a ground listed in § 2802(c), the question of reasonableness would not, on this record, raise a genuine fact issue precluding summary judgment. The plaintiff contends that the termination of the franchise was a drastic response to his failure to pay, constituting an arbitrary and capricious termination in violation of the Act. He points out that under his Sales Agreement with Exxon, Exxon has reserved the right to offset rental delinquencies with credit card receipts and he contends that it was not reasonable for Exxon to choose to terminate his franchise instead of offsetting credit sales against his indebtedness under the Lease Agreement. Exxon, on the other hand, has submitted evidence showing that it was Exxon's uniform and consistent policy and practice in the Nashville area not to apply the offset provision of the Sales Agreements to payments due under Lease Agreements, but rather to forward credit card payments to its dealers on a regular basis, as it did to the plaintiff. Further, plaintiff has admitted that he never requested such an offset prior to termination. Nor did the agreements in question in any way obligate Exxon to offset plaintiff's rental delinquencies. It is not the role of this Court to substitute its business judgment for that of the defendant where a decision is reasonable on its face, *Kajdan*

*v. Exxon Co., U.S.A.*, 1980–1 Trade Cas. ¶ 63, 262 (D.Conn.1980), and even if an ad hoc determination were appropriate, this Court could not conclude that the plaintiff had raised any genuine and material factual issue regarding the reasonableness of the defendant's decision to terminate under these circumstances. This Court's holding, however, is that Congress has expressly determined that a franchisor's decision to terminate is reasonable under the present circumstances and the plaintiff's contention that such drastic action was unreasonable must be rejected.

 Finally, the plaintiff argues that his failure to pay rent when due was beyond his power to control and therefore excusable under Section 2801(13)(B), which provides:

> "The term 'failure' does not include ...
>
> (B) any failure for a cause beyond the reasonable control of the franchise."

The plaintiff argues that he made good faith efforts to make his payments on time but that because the economy declined and gasoline sales volume dropped at his service station, his efforts were unavailing. This Court recognizes and sympathizes with the plight of the plaintiff and all those who have suffered from the recent economic decline. Moreover, this Court's decision for the defendant in this case is not based upon any showing that the plaintiff lacked good faith in failing to carry out the provisions of the franchise, as defendant has argued under Section 2802(b)(2)(B). Nevertheless, this Court holds that Section 2801(13) does not excuse the plaintiff's failure. To recognize the excuse of hard times would virtually nullify Congress' determination in section 2802(c)(8) that franchises may be terminated when the franchisee cannot make timely payments to the franchisor. In enacting the PMPA, Congress sought to establish protection for franchisees from arbitrary terminations, but

---

**1.** This Court does not reach the question whether or not section 2802(b)(2)(A) in fact affords Exxon a basis for termination in view of the *Brach* Court's analysis of that section as requiring the reasonableness determination that plaintiff urges. *See* 677 F.2d at 1222–1223. This in no way affects, however, this Court's holding concerning section 2802(c)(8).

"at the same time, Congress also fully accepted that 'this subject area requires recognition of *the legitimate needs of a franchisor* to be able to terminate a franchise or not renew a franchise relationship based on *certain actions of the franchisee.*'" *Kajdan,* 1980–1 Trade Cas. at 78,302 (quoting with added emphasis S.Rept. No. 95–731, 95th Cong., 2d Sess. 19 (1978)).

On the pleadings and evidence before this Court there are no genuine issues of material fact precluding summary judgment and this Court concludes that defendant Exxon is entitled to judgment as a matter of law. Plaintiff does not dispute that the sole reason for the termination of plaintiff's franchise was his failure to pay rent when due, payment to which Exxon is entitled. He has, furthermore, admitted such nonpayment and that Exxon complied with the Act's notification requirements. This Court holds, as a matter of law, that the nonpayment of rent when due is a sufficient ground for the termination of plaintiff's franchise under sections 2802(b)(2)(C) and 2802(c).

 Because summary judgment will be entered for the defendant, the plaintiff is, of course, not entitled to a preliminary injunction. In any event, however, the plaintiff has not met his burden of persuasion which arose under section 2805(b)(2) upon Exxon's showing that the termination is permissible. *Kajdan,* 1980–1 Trade Cas. at 78,304. Even assuming that he has met his burden as to the first and third conditions of section 2805(b)(2), requiring the showing of both an actual termination and a balance of hardships favoring the plaintiff, he has presented no serious question necessitating trial on the merits as required under section 2805(b)(2)(A)(ii). *See Palmieri v. Mobil Oil,* 682 F.2d 295, 296 (2d Cir.1982); *Shanholt v. Arco Petroleum Products Co.,* No. 80–0227 (N.D.Inc. June 16, 1981); *Saad v. Shell Oil Co.,* 460 F.Supp. 114, 116 (E.D.Mich.1978). The Court notes, in addition, that section 2805(b)(2)(B), which requires balancing the hardships, does not unequivocally weigh in favor of the plaintiff because, as he testi-

fied, he is employed full time by the United States Postal Service; hence, his operation, through a manager, of the franchise is far from his sole livelihood. Moreover, even if the plaintiff had shown he were otherwise entitled to a preliminary injunction, the granting of an injunction would nevertheless be discretionary in this instance pursuant to section 2805(b)(4)(A) because the plaintiff failed to file this action within 90 days of the notice of termination. *See Walters v. Chevron,* 476 F.Supp. at 357. For all of these reasons, the plaintiff's motion will be denied.

In sum, based on the plaintiff's testimony at the hearing, the affidavits, and documents received into evidence, this Court finds that there are no questions that "make fair grounds for litigation," *Saad,* 460 F.Supp. at 117, and that defendant Exxon's action in terminating the plaintiff's franchise is in compliance with the Petroleum Marketing Practices Act. Accordingly, the plaintiff is not entitled to a preliminary injunction. Furthermore, having found that there are no genuine issues of material fact, the Court concludes that Exxon is entitled to summary judgment as a matter of law. An appropriate ORDER will be entered dismissing this action.