### In re MATTHEWS ENTERPRISES, INC., Debtor.

### Robert J. MATTHEWS and Matthews Enterprises, Inc., Plaintiffs,

v.

### SHELL OIL COMPANY, Defendant.

**Bankruptcy No. IP84–4785RA.**
**Adv. No. 85–0123.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

June 12, 1985.

David L. Dunlap, Richard O. Adams, Ancel, Dunlap & Traylor, Indianapolis, Ind., for plaintiffs.

Ronald W. Buchmeier, Bamberger & Feibleman, Indianapolis, Ind., for defendant.

ENTRY ON MOTION TO DISMISS

ROBERT L. BAYT, Bankruptcy Judge.

This cause is before the Court upon a motion by the defendant, Shell Oil Company ("Shell"), to dismiss the complaint of the plaintiffs, Robert J. Matthews and Matthews Enterprises, Inc. On February 26, 1985, the plaintiffs filed a Complaint for Preliminary Injunction, Permanent Injunction and Other Relief, and for Emergency Hearing Thereon. The complaint was brought pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801, *et seq.* ("PMPA"), on the grounds that Shell improperly terminated or failed to renew a service station franchise with the debtor.

On March 1, 1985, the Court issued a Temporary Restraining Order enjoining Shell from undertaking any efforts to remove the debtor from the service station and ordered Shell to continue honoring the terms of the franchise pending determination of the merits of the complaint. The parties have filed affidavits and briefs in support of their relative motions and have also agreed to treat the motion to dismiss as a motion for summary judgment.

The basic facts may be briefly stated. Beginning in 1979, Robert J. Matthews and Shell entered into successive franchise agreements authorizing Mr. Matthews to operate a Shell service station, known as "Nora Shell", located at 8602 Westfield Boulevard, Indianapolis, Indiana. Pursuant to the franchise agreement, the terms and conditions of which are embodied in various Motor Fuel Station Agreements and Dealer Agreements, Mr. Matthews was authorized to, among other things, purchase products from Shell for retail sale and utilize Shell's trademarks to identify the station. The last Motor Fuel Station Lease and Dealer Agreement entered into between the parties extended the franchise through the period ending December 30, 1984.

The Lease and Agreement contained the following provisions which are relevant to the issues at hand:

(1) This (Agreement) is personal to (Mr. Matthews) and (Mr. Matthews) shall not assign or encumber ... this (Agreement) ... without Shell's prior written consent, which consent shall not be unreasonably withheld.

(2) (Mr. Matthews) shall comply with all laws, licenses and permits relating to the premises, or any use thereof or to any act or activity on the premises.... Mr. Matthews is required to satisfy all regulatory requirements and timely pay all charges incident to (his) use of the (station) including all federal, state and local taxes.

On or about October 10, 1984, Shell was advised by the Indiana Department of Revenue that Mr. Matthews had failed to pay over $150,000.00 in sales taxes arising out of the operation of the station and had not been paying the accumulated arrearage or the current taxes he owed. On November 13, 1984, Shell mailed its letter by certified mail notifying Mr. Matthews that, on account of his failure to pay those sales taxes, the franchise consisting of the Motor Fuel Station Lease and Dealer Agreement would not be renewed after February 28, 1985. Before that time Shell had made a proposal to renew the franchise with Mr. Matthews, but Mr. Matthews had not yet accepted that proposal. Shell's letter also revoked Shell's proposal to renew the franchise.

On December 18, 1984, the debtor, Matthews Enterprises, Inc., filed its voluntary petition in bankruptcy under Chapter 11. The debtor listed its address as the station Shell was leasing to Mr. Matthews and claimed interest in the franchise agreement between Mr. Matthews and Shell. Said filing made Shell aware of the fact that Mr. Matthews had apparently attempted to transfer the franchise to the debtor without Shell's consent. Shell then mailed Mr. Matthews its letter of February 19, 1985, supplementing its previous notification of nonrenewal by adding Mr. Matthews' alleged unauthorized assignment as another grounds for nonrenewal.

The issues to be decided by this Court are as follows:

(1) Whether Shell had proper grounds for its failure to renew the franchise relationship with Mr. Matthews and Matthews Enterprises, Inc.

(2) Whether the franchise agreement was terminated prior to the filing of bankruptcy so as to preclude the franchise from being part of the debtor corporation's estate.

In regard to the first issue Shell contends that the debtor's failure to pay more than $150,000.00 in sales taxes constitutes grounds for Shell's refusal to renew the franchise relationship under PMPA Sections 2802(b)(2)(A) and 2802(b)(2)(C).

Shell's right to renew the franchise is limited by the provisions of the PMPA. In order for the nonrenewal to be proper, Shell must not only give proper notification but also have proper grounds. 15 U.S.C. Section 2802(b)(1). Shell contends that it has two grounds for nonrenewal in this case, either of which satisfies the PMPA's requirements: first, the failure of the franchisee to pay sales taxes; and secondly, the attempted transfer of the franchise without Shell's prior written consent. There is no dispute between the parties as to the fact that the sales taxes were due and owing.

■ The franchisee's failure to pay state sales taxes is grounds for nonrenewal pursuant to PMPA Sections 2802(b)(2)(A), 2802(b)(2)(C) and 2802(c)(11). Section 2802(b)(2)(A) authorizes termination or nonrenewal of a franchise where the franchisee has failed to comply with a provision that is reasonable and of material significance to the franchise relationship. Here, the failure of the franchisee to pay the Indiana sales taxes constitutes a failure to comply with the following provisions of the Lease and Dealer Agreement:

(1) Mr. Matthews "shall satisfy all regulatory requirements and timely pay all charges incident to lessee's use of the premises and business conducted thereon, including all federal, state and local taxes and assessments ..."

(2) Mr. Matthews "shall comply with all laws, licenses and permits relating to the premises, or any use thereof or to any act or activity on the premises ..."

Furthermore, both the Lease and Dealer Agreement specifically provide that Shell may terminate them upon the failure by Mr. Matthews "to comply with any provision of this Lease, which provision is both reasonable and of material significance to the relationship hereunder" and upon Mr. Matthews' failure "to comply with federal, state or local laws or regulations relevant to the operation of the premises."

The failure to pay sales taxes is a breach of trust which reflects on the character of the business. It also adversely affects the station's ability to compete with other service stations. The requirement that Mr. Matthews pay all state taxes arising out of the operation of the station is, therefore, reasonable and of material significance to the franchise relationship.

In addition, the PMPA specifically authorizes termination or nonrenewal in the event: (1) fraud or criminal misconduct relevant to the operation of the marketing premises, Section 2802(c)(1); (2) declaration of bankruptcy or judicial determination of insolvency of the franchisee, Section 2802(c)(2); (3) failure by the franchisee to operate the marketing premises for seven consecutive days or lesser unreasonable periods of time, Section 2802(c)(9); (4) the failure of the franchisee to comply with federal, state or local laws or regulations relevant to the operation of the marketing premises, Section 2802(c)(11); and (5) conviction of the franchisee of any felony involving moral turpitude, Section 2802(c)(12).

Termination or nonrenewal is also specifically authorized where an event has occurred that is relevant to the franchise relationship and that makes termination reasonable under Section 2802(b)(2)(C). One of these specific events is the failure of the franchisee to comply with federal, state or local laws or regulations relevant to the operation of the marketing premises. Section 2802(c)(11). Therefore, Mr. Matthews' failure to pay taxes is proper grounds for Shell's nonrenewal of the franchise relationship under PMPA Sections 2802(b)(2)(A) and 2802(b)(2)(C).

In regard to the second issue Shell maintains that it gave proper notification of nonrenewal pursuant to Section 2804 by its letter of November 13, 1984. Shell also asserts that the franchise is not part of the debtor corporation's estate since a valid transfer from Mr. Matthews to Matthews Enterprises, Inc. could not take place without Shell's prior written consent.

Mr. Matthews argues that Shell may not rely upon these grounds for nonrenewal because Shell knew that the franchisee was in serious tax trouble and did not timely

notify pursuant to Section 2802(b)(2)(A)(i) of its intention not to renew on the basis of the franchisee's tax problems. Section 2802(b)(2)(A)(i) requires that a franchisor relying on this section for nonrenewal must give notification within 120 days after having first acquired actual or constructive knowledge of Mr. Matthews' failure to pay his taxes. In addition, Mr. Matthews argues that Shell is estopped to deny transfer of the franchise because the checks that Shell accepted as payment bore the corporate name of Matthews Enterprises, Inc. during the period from December, 1979 through August, 1983.

Shell admits that before September, 1983, it knew that Mr. Matthews had failed to pay sales taxes he owed to the State. However, Shell is not barred from asserting Matthews' failures to pay his taxes as grounds for nonrenewal for several reasons.

First, Shell's notification of nonrenewal based on Sections 2802(b)(2)(A) and 2802(b)(2)(C) occurred on November 13, 1984. Shell could rely on any grounds it learned of during the preceding 120-day period. Therefore, if Shell first learned of any failure by Mr. Matthews to pay taxes within the 120-day period from July 14, 1984 to November 13, 1984, Shell could rely upon that failure.

■ According to Exhibit "A", Mr. Matthews failed to pay $7,328.17 for the period of June, 1984; $6,965.11 for the period of July, 1984; and $6,641.55 for the period of August, 1984. Indiana Code 6–2.-5–6–1 provides that payment is due 20 days after the end of the month. Therefore, Mr. Matthews failed to pay over $20,000.00 in taxes during the period within 120 days of Shell's notification of nonrenewal. Shell could not have known of Matthews' nonpayment of these taxes until after July 20, 1984, when they first occurred. Furthermore, Shell's knowledge of or waiver of Matthews' earlier failures to pay similar taxes does not bar Shell's right to rely on his subsequent failures. Each new default in payment of taxes would constitute new grounds for termination or nonrenewal un-

der Sections 2802(b)(2)(A) and 2802(b)(2)(C). *Walters v. Chevron U.S.A., Inc.,* 476 F.Supp. 353 (N.D.Ga.1979), *aff'd,* 615 F.2d 1135 (5th Cir.1980); *Escobar v. Mobil Oil Corp.,* 522 F.Supp. 593, 601–602 (D.Conn. 1981), *inj. vacated,* 678 F.2d 398 (2d Cir. 1982).

Second, Exhibit "A" shows that Mr. Matthews' earlier failures to pay taxes having continued to the present time. Even if Shell knew of Mr. Matthews' nonpayment when the taxes were first due, his continuing nonpayment of those taxes has constituted a continuing failure to abide by the terms of the franchise agreement to pay those taxes. Until the taxes are paid, the 120-day period during which Shell must exercise its rights of termination does not commence to run. *See Moody v. Amoco Oil Co.,* 31 B.R. 216, 222 (Bankr.W.D.Wis. 1983), *aff'd in part, rev'd in part,* 743 F.2d 1200 (7th Cir.1984). To rule otherwise would either reward the franchisee's failures if they continued beyond the 120-day period, or encourage the franchisor to terminate without giving the franchisee opportunity to cure.

Third, the 120-day period does not commence until Shell has knowledge of the failures, regardless of when they occurred. In this case, Shell admits that its territory manager knew of Mr. Matthews' failures in the summer of 1983. However, Mr. Matthews had negotiated with the Indiana Department of Revenue and agreed to pay these past due taxes in installments and to keep current in the payment on future taxes. It was not until October, 1984 that Shell learned that Mr. Matthews had failed to pay taxes owed prior to September, 1983, according to his arrangements with the State and had also failed to pay the current taxes for the period after 1983. Notification of nonrenewal on November 13, 1984, was within 120 days of the time Shell first learned of those failures. Thus, for the above reasons, Shell's notification of nonrenewal was timely and complied with the PMPA.

A similar result was reached by the Seventh Circuit in *Moody v. Amoco Oil Co.,*

*supra.* In that case, the court held that a 90-day prepetition notice of termination was effective, even though the termination itself occurred after the filing date. The court stated:

> The fact that the termination itself was not effective for ninety days does not affect the result. The filing of the chapter 11 petition cannot expand debtor's rights as against Amoco. (Citations omitted.) When the termination notice was sent, debtors only had a right to ninety days' worth of dealership contracts. The filing of the petition does not expand that right.... Similarly, section 541(a) provides that a debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of a case." Thus, whatever rights a debtor has in property at the commencement of the case continues (sic) in bankruptcy—no more, no less. Section 541 "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *Id.* at 1213.

Here, the notice of nonrenewal was mailed by certified mail on November 13, 1984. The letter stated that the franchise would terminate after February 28, 1985. Then on December 18, 1984, Matthews Enterprises, Inc. filed bankruptcy. Nothing remained to complete the termination process except the mere passage of time. By its own terms, the franchise agreement was to expire on February 28, 1985, and the voluntary filing of the Chapter 11 petition did not change that result.

In light of the Court's decision on this issue, the question as to whether Mr. Matthews had validly transferred his franchise interest to Matthews Enterprises, Inc. is moot. Proper notification had been made and the franchise had simply expired. Therefore, as a matter of law the franchise is not part of the debtor's estate.

Accordingly, this Court GRANTS summary judgment in favor of the defendant, Shell Oil Company.