**CHEVRON U.S.A., INC.,**
**Plaintiff-appellant,**
**cross-appellee,**

v.

**Martin A. FINN, Defendant-appellee,**
**cross-appellant.**

**Nos. 86–3807, 86–3757 and 86–3850.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1987.

Decided July 15, 1988.

---

Karen J. Vanderlan, Thomas Huber and Shannon Fitzpatrick, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for plaintiff-appellant, cross-appellee.

Samuel J. Stiltner, John Mucklestone, James R. McLees and William G. Satell, Hohlbein & Fetty, Seattle, Wash., Gregory O. DeBay, Federal Way, Wash., for defendant-appellee, cross-appellant.

Before NELSON[*] and BEEZER, Circuit Judges, and NIELSEN,[**] Senior District Judge.

PER CURIAM:

Chevron appeals from the order of the district court determining that Chevron's notice of termination of franchise agreement was untimely and awarding costs and damages to Finn in the amount of $64,778. Finn cross-appeals the dismissal by the district court of his claim for personal injuries and the court's refusal to award exemplary damages.

The facts, viewed in a light most favorable to the prevailing party, are as follows: Since 1975 Finn has operated a service station in Seattle, Washington. The station is Chevron's largest volume dealer in the south Seattle area. In 1981, Finn experienced difficulties in obtaining deliveries of fuel, attributed to the deregulation of the industry and the limited supplies of gasoline.

[*] Judge Nelson was drawn to replace Judge Kennedy. She has read the briefs, reviewed the record and listened to the tape of oral argument held on September 9, 1987.

[**] The Honorable Leland C. Nielsen, Senior District Judge for the Southern District of California, sitting by designation.

On March 28, 1981, Finn met with Chevron retail sales representative, Bill Westphal. At the meeting Finn told Westphal he would purchase his fuel from an outside source when Chevron could not supply his fuel needs.

On May 5, 1981, Chevron and Finn entered into a new Dealer Lease and Dealer Supply Contract for the term November 1, 1981 through October 31, 1984.

Beginning January 6, 1982, Finn purchased 96,002 gallons of fuel from Crown Petroleum in sixteen separate purchases and deliveries. Finn notified Westphal of the first five deliveries. It is undisputed that neither Westphal, who left his position on February 1, 1982, nor any other Chevron representative was notified of any of the last eleven purchases. The last purchase occurred on October 7, 1982.

On December 21, 1983, Chevron attended the deposition of Joyce Rindal, a Crown Petroleum employee, taken in the course of a related lawsuit. At that deposition, Chevron learned of the last eleven purchases occurring from April 29, 1982 through October 7, 1982.

On February 24, 1984, Chevron issued a notice of termination. The notice stated that the lease was terminated because of Finn's:

> willful adulteration and commingling of Chevron motor fuels with those purchased from a source other than Chevron and [his] sales of non-Chevron motor fuels through Chevron's trademarked equipment.

In April 1984, Chevron filed a declaratory judgment action against Finn seeking a declaration that Finn had violated the Dealer Lease and Dealer Supply Contract, and that the lease was lawfully terminated by Chevron's notice under Section 2802 of the Petroleum Marketing Practices Act (the Act) (codified at 15 U.S.C. § 2802 [1982]). Finn answered and counterclaimed seeking injunctive relief, damages, punitive damages and attorneys' fees and costs under the theory that Chevron's notice of termination was untimely and the termination caused him personal injuries. The trial was bifurcated into liability and damages phases.

The district court determined that Chevron's notice of termination was untimely because Chevron did not issue the notice within 120 days of acquiring actual or constructive knowledge of the grounds for termination as required by Section 2802(b)(2)(A)(i) of the Act. The court awarded Finn damages of $5,878 for improper "charge backs" by Chevron of rental rebates; $18,900 plus interest for lost profits from Finn's inability to participate in Chevron's variable rental program; and $40,000 for attorneys' fees and costs. The district court refused to award exemplary damages and dismissed Finn's claim for personal injuries.

Section 2802(b)(2)(A)(i) of the Act states:
(2) For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

(A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure—

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given....

The district court concluded that Chevron first acquired actual or constructive knowledge of the grounds for termination more than 120 days prior to the termination notice. Thus, the notice was untimely. That knowledge was in the form of a conversation between Finn and Westphal on March 28, 1981 wherein Finn informed Westphal that he was going to purchase non-Chevron products whenever he was unable to secure Chevron products to fill his needs, and Westphal responded, "I don't blame you." The fact that Finn informed Westphal of the first five purchases, but not of the last eleven, is inconsequential, as the district court found that the March 28, 1981 conversation constituted notice to Chevron of "the practice he was going to engage in."

█ We disagree. At most, this exchange constituted notice of an intent by Finn to purchase non-Chevron fuel in the future. It did not amount to actual or constructive knowledge of the grounds for terminating the lease, i.e., the actual purchase and commingling of non-Chevron fuel and the sale of that fuel through Chevron's trademarked equipment. That is the fact the knowledge of which must be acquired within 120 days of termination. Therefore, this conversation does not constitute knowledge justifying termination, nor does it constitute a timeliness bar to Chevron's notice of termination.

█ Further, while it is true Finn informed Westphal of the first five purchases of non-Chevron fuel, it is undisputed that Finn did not inform any Chevron employee of the last eleven purchases. Nor did anyone at Chevron know of Finn's failure to cover up the Chevron logo when selling non-Chevron fuel. These last eleven purchases were each a separate violation of the lease agreement and constituted separate grounds for terminating the lease. *Gruber v. Mobil Oil Corp.*, 570 F.Supp. 1088 (E.D.Mich.1983); *Escobar v. Mobil Oil Corp.*, 522 F.Supp. 593 (D.Conn.1981); *Walters v. Chevron U.S.A., Inc.*, 476 F.Supp. 353 (N.D.Ga.1979); *aff'd per curiam*, 615 F.2d 1135 (5th Cir.1980).

In *Gruber*, plaintiff failed to abide by the hours-of operation provision of the lease and failed to operate the station in a clean, safe and healthful manner. Mobil sent Gruber a notice of termination. Gruber argued the notice was untimely because Mobil first acquired knowledge of the violations more than 120 days prior to the notice of termination. The court rejected Gruber's argument, reasoning that the 120–day provision:

> is intended to 'preclude a franchisor from basing termination or non-renewal upon old and long forgotten events. [citation omitted]....' When the alleged failure to conform with the lease is ongoing, occurring within and prior to the 120–day limitation, then the breaching event is not considered stale, but rather, viewed as a new ground for terminating the relationship each time the franchisee fails to comply.

*Gruber*, 570 F.Supp. at 1092.

In *Escobar*, plaintiff sought an injunction to restrain the franchisor from terminating the franchise. The district court granted the injunction because the notice was inadequate, but the court stated that Mobil would otherwise have been legally justified in terminating plaintiff's franchise due to plaintiff's repeated and ongoing violations of the lease provision prohibiting the storage of unregistered motor vehicles on the premises. *Escobar*, 522 F.Supp. at 601.

Plaintiff argued that Mobil knew of the violations for at least seven years and failed to act. The court rejected the argument stating:

> This record does not indicate that Mobil ever abandoned its right to insist on compliance with its franchise agreement, or that it acquiesced in noncompliance.
>
> \* \* \* \* \* \*
>
> Each instance of noncompliance was a separate failure to comply within the meaning of section 2802(b)(2)(A)(i) of the Act....

*Escobar*, 522 F.Supp. at 601–02.

In *Walters*, a district court again addressed the issue of an ongoing repeated violation of a lease provision requiring maintenance of the station in a clean, safe and healthful manner. The court acknowledged the first violations occurred more than 120 days prior to the notice of termination, and plaintiff argued the notice was, therefore, untimely. The court disagreed, preferring to treat each instance of noncompliance as a separate violation. *Walters*, 476 F.Supp. at 357. *See also, Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54 (2d Cir.1984); *Amoco Oil Co. v. D.Z. Enterprises, Inc.*, 607 F.Supp. 595, 600–01 (E.D. N.Y.1985).

This approach is also consistent with the legislative history of the Act which states that the time limitations exist to prevent a franchisor from terminating based upon "old and long-forgotten events," and are not intended to stop a termination based upon a future event which constitutes a

ground for termination, even if such future event is a repeat occurrence of an event with respect to which the previous exercise of termination was waived. S.Rep. No. 95–731, 95th Cong., 2d Sess. 33, *reprinted in* 1978 U.S. Code Cong. & Admin.News 873, 892. *See Walters,* 476 F.Supp. at 359.

As these cases indicate, where there are multiple violations of the lease, each violation constitutes a separate ground for termination. Therefore, each of the last eleven purchases made without notice to Chevron constituted a violation of the lease.

■ While it is true the last eleven purchases occurred more than 120 days prior to the notice of termination, the 120–day provision is triggered not by the violation itself, but by the acquisition by the franchisor of "actual or constructive knowledge of such failure." 15 U.S.C. § 2802(b)(2)(A)(i).

Chevron did not acquire knowledge of the last eleven purchases and commingling of non-Chevron fuel and the sale of that fuel through Chevron's trademarked equipment until well within the 120–day period. Chevron learned of the purchases at the deposition of Joyce Rindal on December 21, 1983, and issued the notice of termination 65 days later, on February 24, 1984. The district court's conclusion that Chevron's notice was untimely under Section 2802(b)(2) of the Act is reversed.

Since the notice of termination was timely, no damages could have flowed from such termination. Therefore, the award of damages to plaintiff is reversed, and the district court's dismissal of plaintiff's claim for personal injuries is affirmed.

REVERSED IN PART AND AFFIRMED IN PART.