Tom W. WEISENBURGER, d/b/a Tom's Standard Station, Plaintiff,

v.

AMOCO OIL COMPANY, Defendant.

Civ. No. A3–81–129.

United States District Court, D. North Dakota, Southeastern Division.

March 22, 1982.

Jack G. Marcil, Tenneson, Serkland, Lundberg, Erickson & Marcil, Ltd., Fargo, N. D., for plaintiff.

Douglas R. Herman, Vogel Law Firm, Fargo, N. D., for defendant; Dale L. Larson & Rita A. McConnell, Robins, Zelle, Larson & Keplan, Minneapolis, Minn., David L. Doyle, Standard Oil Co., Chicago, Ill., of counsel.

MEMORANDUM OF DECISION AND ORDER FOR JUDGMENT

BENSON, Chief Judge.

On August 13, 1981, plaintiff Tom W. Weisenburger filed a two count complaint against defendant Amoco Oil Company (Amoco). Count one alleged wrongful failure to renew his franchise and lease[1] in violation of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801, *et seq.,* for which plaintiff sought both preliminary and permanent injunctions. Count two, alternatively, is grounded on a claim for compensatory and punitive damages for wrongful termination of the franchise. Prior to a scheduled hearing on the preliminary injunction request, the parties stipulated to continue the franchise relationship pending a trial on the merits and asked that the trial be expedited. Subsequently the case was noticed for trial commencing March 4, 1982. At pretrial on February 24, 1982, it was conceded that plaintiff had continued to do business without interruption under the franchise agreement. The issue before the court was thereby reduced to the question of whether the plaintiff was entitled to an injunction or whether the defendant was entitled to terminate the franchise. However the court might hold, the plaintiff was left without a cause of action for damages. The court severed the damage claim and ordered the injunctive claim to be tried to the court in equity.

FINDINGS OF FACT

Plaintiff Weisenburger first became associated with Amoco in 1969 when he was hired as an Amoco territory manager in North Dakota. His duties included: assisting Amoco franchisees, sales, inspecting service stations to ensure franchise compliance, and finding and training replacement les-

---

1. When filed, the complaint also alleged a claim of misrepresentation; however, at pretrial conference the parties agreed to strike the misrepresentation claim alleged at count one, paragraph IV.

sees-franchisees. In 1973, Weisenburger left his position as territory manager and entered into a lease agreement with Amoco covering a high sales volume Amoco interstate highway station at Jamestown, North Dakota. He operated the station for three years under three successive one-year leases. It was Amoco's policy to give franchisees a five-year lease after a franchisee had operated under three one-year leases. On October 23, 1976, plaintiff and Amoco entered into a five-year lease to terminate August 31, 1981. The lease contained a provision requiring the lessee to "keep said premises and appurtenances including adjoining areas, alleys and sidewalks in clean, safe and healthful conditions." Each Amoco lessee was required to subscribe to Amoco's dealer policy which included "providing adequately trained manpower, proper hours of operation and a clean and attractive station appearance that will enhance motorist acceptance." Plaintiff subscribed to the policy.

Plaintiff, as a former territory manager for Amoco, had been responsible, in his contacts with franchisees, for enforcement of the cleanliness and appearance standards required by Amoco. As a result, at the time he entered into the lease with Amoco, he was fully familiar with those standards. As early as 1975, Amoco representatives became concerned with the failure of the plaintiff to observe the standards at his station. The deficiencies were brought to his attention and he was advised that his lease might not be renewed unless they were corrected. Plaintiff promised to improve his operation and he was allowed to enter into the five-year lease. Continuously thereafter Amoco representatives found the station was not being maintained as required by company standards for cleanliness and appearance. The problems were discussed with the plaintiff. His usual response was that he would clean it up and try to do better. Except for some short term windowdressing, plaintiff failed continuously to upgrade the station's appearance.

Amoco's marketing strategy was to enhance the Amoco brand image and create consumer loyalty by demonstrating that Amoco dealers provided good service and a pleasant, clean, attractive place to do business. On March 12, 1980, an Amoco representative inspected and took photographs of plaintiff's station. The photographs revealed grossly unclean conditions, obviously far short of Amoco standards for appearance and cleanliness. The restrooms were filthy, lube bays and service islands were oily and dirty, and walls, ceilings, and windows had accumulated dust and were unwashed. The conditions observed could have only accumulated over a long period of time.

On March 24, plaintiff was informed by letter of the findings of the March 12 inspection. He was advised that the station would be inspected again within thirty days, and if deficiencies were not corrected his lease with Amoco could be in jeopardy. Amoco's district manager inspected the premises on April 22, 1980. Plaintiff was not present and his station was again found to be dirty. With the possible exception of some firewood having been removed, conditions showed very little improvement. On May 5, 1980, plaintiff was advised orally of the findings on the second inspection. During the remainder of 1980 and early 1981 [2] the station underwent three regularly scheduled documented inspections and numerous other informal inspections, and on all but one occasion the appearance of the station was found to be substandard.

Photographs were again taken on April 8, 1981 during an inspection. The appearance and cleanliness of the station had been improved a bit but it remained seriously substandard. Amoco's local territory and sales managers recommended that the lease not be renewed. Amoco officials continued to monitor plaintiff's station and point out problems to plaintiff. Plaintiff admitted at

**2.** Documented inspections took place on May 5, 1980, June 10, 1980 and August 21, 1980. Informal inspections occurred on February 12, 1981, February 23, 1981, and April 8, 1981. In April 1981, two Amoco supervisors met with plaintiff and discussed appearance problems.

trial that he never made a serious attempt to change his procedures or upgrade the appearance of his station. Plaintiff did not at any time appear to be particularly concerned with the station appearance or Amoco's complaints.[3]

Plaintiff was notified by certified letter dated May 15, 1981 that his lease would not be renewed at the end of its term on August 31, 1981. The reason given for nonrenewal was failure to operate the station in a clean, safe and healthful manner. A summary of the PMPA was enclosed.

## APPLICABLE LAW

The PMPA was enacted to protect motor fuel franchisees from unfair terminations or nonrenewals of their franchises for arbitrary or discriminatory reasons. *Walters v. Chevron, U. S. A., Inc.*, 476 F.Supp. 353 (N.D.Ga.1979), *aff'd*, 615 F.2d 1135 (5th Cir. 1980); *Saad v. Shell Oil Co.*, 460 F.Supp. 114 (E.D.Mich.1978). Under the PMPA, the franchisee has the burden of proving the termination of the franchise or nonrenewal of the franchise relationship, 15 U.S.C. § 2805(c).[4] In this case, the parties have stipulated that plaintiff has met that burden. The franchisor then has the burden of going forward with evidence to establish an affirmative defense that such termination or nonrenewal complied with the PMPA, *id.*

Amoco asserts it has met its burden by showing plaintiff's nonrenewal was based on plaintiff's failure to comply with the terms of the lease relating to cleanliness and appearance, and plaintiff's failure to meet the requirements of 15 U.S.C. § 2802(b)(3)(C). Under Section 2802(b)(2), grounds for termination or nonrenewal may be based on:

(A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure—

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title;

. . . . .

(B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise, if—

(i) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; and

(ii) such failure thereafter continued within the period which began not more than 180 days before the date notification of termination or nonrenewal was given pursuant to section 2804 of this title.

Section 2802(b)(3)(C) lists the following basis for nonrenewal:

A failure by the franchisee to operate the marketing premises in a clean, safe, and healthful manner, if the franchisee failed to do so on two or more previous occasions and the franchisor notified the franchisee of such failure.

## HOLDING

The court holds from the evidence before it that the defendant is entitled to nonrenewal of the lease for failure of the plaintiff to comply with the clean and attractive appearance requirements of the lease provi-

---

**3.** Weisenburger contends that on one occasion he was given an award of $16.92 for his compliance with an Amoco's station appearance promotion. The evidence disclosed that the check for $16.92 was given as a refund for pump inspection fees.

**4.** 15 U.S.C. § 2805(c) provides as follows:

In any action under subsection (a) of this section, the franchisee shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship. The franchisor shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted under section 2802(b) or 2803 of this title, and, if applicable, that such franchisor complied with the requirements of section 2802(d) of this title.

sion and the implementing Amoco Dealer Policy, and for a 2802(b)(3)(C) failure to operate marketing premises in a clean, safe and healthful manner.[5] Notification met the requirements of 15 U.S.C. § 2804.[6]

Amoco's cleanliness and appearance standards were material, reasonable and essential to the development and maintenance of its public image and marketing strategy. Additionally, the station leased to plaintiff was a key station in the district, adjacent to a major east-west transcontinental interstate highway with a high business volume potential and exposure to thousands of customers annually.

The cleanliness and appearance problem was not "an old and long forgotten event." It was a continuing problem throughout the eight years that plaintiff held a lease on the site. The problem was never cured by the plaintiff and the noncompliance was never condoned or waived by the defendant. *See Walters v. Chevron, supra* at 356–67. It appears to the court that plaintiff was allowed to continue primarily because of his having previously been a territory manager for Amoco; the belief on the part of some of Amoco's supervisors and managers that plaintiff had the capacity to be one of the finest operators in Amoco's organization; and on their hope and desire that he could be induced to accept and comply with the company's standards.

### ORDER FOR JUDGMENT

IT IS ORDERED that judgment be entered as follows:

A. Plaintiff's application for an injunction prohibiting the nonrenewal and termination of the lease is denied.

B. Pursuant to the equitable powers conferred on this court under 15 U.S.C. Section 2805, the lease is terminated effective May 31, 1982, or on such other date on which the parties may agree.

C. In all other respects, the complaint and cause of action is dismissed.

---

5. Under the PMPA the franchisor has the burden of going forward with evidence of an affirmative defense, 15 U.S.C. § 2805(c); it is not clear, however, as to which party has the burden of persuasion. As noted in earlier cases, legislative history seems to require that the burden of proving compliance with the PMPA remains on the franchisor. *See Escobar v. Mobil Oil Corp.*, 522 F.Supp. 593 (D.Conn.1981); S.Rep.No.95–731, 95th Cong.2d Sess., reprinted in (1978) U.S.Code Cong. & Admin.News 873, 874, 899. Without addressing the issue of the applicable burden of proof, the court finds Amoco has met the burden of going forward and of persuasion on all PMPA requirements under 15 U.S.C. §§ 2802(b)(2) and 2804.

6. The notification requirements are:

(c) Notification under this section—

(1) shall be in writing;

(2) shall be posted by certified mail or personally delivered to the franchisee; and

(3) shall contain—

(A) a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;

(B) the date on when such termination or nonrenewal takes effect; and

(C) the summary statement prepared under subsection (d) of this section.

15 U.S.C. § 2804(c).