ADAMS, Justice.
This is an appeal from a summary judgment for the defendant in a declaratory judgment action wherein Sutherlin Toyota, Inc. (“Sutherlin”), demanded indemnification from Toyota Motor Sales USA, Inc., et al. (all hereinafter referred to as “TMS”), for damages and attorney fees accruing from counterclaims filed against it in Sutherlin Toyota, Inc. v. James M. Ford, et al., Etowah Circuit Court[1] No. CV-85-434WHR. The following facts are pertinent to a determination of this case.
In April 1985, James and Betty Ford visited Sutherlin Toyota, Inc., and discussed with its agents the possibility of purchasing a 1984 Toyota Ranger. After Sutherlin agreed to install certain accessories that James Ford wanted on the Ranger, the Fords signed the necessary documents and purchased the vehicle. The day after the purchase, James read the documents he and Betty had signed the previous day. Apparently unsatisfied with the substance of the documents, he stopped payment on his check and attempted to rescind the contract.[2] Sutherlin was never given the opportunity to install the accessories that had been requested by James Ford.
Ultimately, Sutherlin sued the Fords to recover the price of the Ranger. The Fords, in turn, counterclaimed, alleging that Sutherlin had misrepresented material facts relevant to the sale and seeking rescission of the contract and damages for the alleged conversion by Sutherlin of their trade-in vehicle. As a result of this counterclaim, Sutherlin sought indemnification from TMS pursuant to the Alabama Motor *461 Vehicle Franchise Act, §§ 8-20-1 through -12, Ala.Code 1975, for all damages and attorney fees arising from the counterclaim. The trial court thereafter entered summary judgment in favor of TMS, and this appeal resulted.
We must interpret the Alabama Motor Vehicle Franchise Act and determine whether that Act provides for indemnification of a dealer by a manufacturer when the alleged misconduct is on the part of the dealership as opposed to the manufacturer. Sutherlin argues that it is entitled to indemnification pursuant to § 8-20-4(3)(o), which states as follows:
“Notwithstanding the terms, provisions or conditions of any dealer agreement or franchise or the terms or provisions of any waiver, prior to the termination, cancellation or nonrenewal of any dealer agreement or franchise, the following acts or conduct shall constitute unfair and deceptive trade practices:
[[Image here]]
“(3) For any manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch or distributor representative:
[[Image here]]
“o. To fail to indemnify and hold harmless its motor vehicle dealers against any losses, including, but not limited to, court costs and reasonable attorneys’ fees, or damages arising out of complaints, claims or lawsuits, including, but not limited to, strict liability, negligence, misrepresentation, warranty (express or implied) or rescission of the sale where the complaint, claim or lawsuit relates to the manufacture, assembly or design of new motor vehicles, parts or accessories, or other functions by the manufacturer, beyond the control of the dealer, including, without limitation, the selection by the manufacturer of parts or components for the vehicle, or any damages to merchandise occurring in transit to the dealer where the carrier is designated by the manufacturer_”
(Emphasis added.)
While Sutherlin insists that the Fords’ claims fall within the purview of this section, TMS contends that the Act was not meant to apply to a situation such as the one in this case. TMS argues that all of the Fords’ counts relate to acts committed solely by Sutherlin and not to acts committed by the manufacturer and, thus, that those acts alleged were not “beyond the control of the dealer.”
We are of the opinion that the purpose of the Act, as stated by the Legislature and as quoted here, is not to indemnify dealers who commit wrongs against consumers:
“The legislature finds and declares that the distribution and sale of motor vehicles within this state vitally affect the general economy of the state and the public interest and the public welfare, and that in order to promote the public interest and the public welfare, and in the exercise of its police power; it is necessary to regulate motor vehicle manufacturers, distributors, dealers and their representatives and to regulate the dealings between manufacturers and distributors or wholesalers and their dealers in order to prevent fraud and other abuses upon the citizens of this state and to protect and preserve the investments and properties of the citizens of this state.”
Section 8-20-2, Ala. Code 1975. The purpose of the Act is clear. It is to protect the state’s citizens from abuses by motor vehicle manufacturers and dealers, and, to that end, to regulate manufacturers and dealers and the dealings between manufacturers and their dealers. In doing that, it to some extent allows indemnity to a dealer who becomes liable to a customer because of “functions by the manufacturer, beyond the control of the dealer.” See § 8-20-4(3)(o), supra. Nothing in the Act, however, suggests that a dealer is entitled to indemnification for damages on attorney fees arising out of the dealer’s own acts that were not the fault or function of the *462 manufacturer. Therefore, we affirm the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.

. This case is currently pending in the Circuit Court of Etowah County.

. Evidently, James Ford also examined the Ranger and determined that it was not new.